UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES, THE, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>LINEATION MARKINGS CORP.,<br><br>  Defendant. | Case No. 14-cv-575-HSG (EDL)<br><br>**REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT AND ENTER JUDGMENT** |

Before the Court is Plaintiffs' motion for default judgment against Defendant Lineation Markings Corporation ("Defendant"). The motion was referred to the Court to prepare a Report and Recommendation. The Court held a hearing on the matter on August 4, 2015 where Plaintiff appeared and Defendant did not appear. For the following reasons, the Court recommends that Plaintiffs' motion be GRANTED.

**I.   BACKGROUND**

Defendant is a professional contracting company that was bound to a written collective bargaining agreement and trust agreement ("the Agreements") with the Northern California District Council of Laborers ("the Union"). Peters Decl. ¶ 6, 7, Exs. D-G. The Agreements require Defendant to pay Plaintiffs for each hour of covered work performed by Defendant's employees. Id. ¶¶ 7, 9, Exs. E-F . They also require Defendant to pay interest on any late or delinquent contributions,[1] attorney's fees, other collection costs, and for the audit of Defendant's books and records, as well as liquidated damages in the event of a breach by Defendant. Id. ¶¶ 10,

---

[1] Payments are due on the 15th of each month, and there is a 10-day grace period after then. Peters Decl. Ex. A at 6 (Art. II § 10 of Trust Agreement). If payment is not received by the 25th of the month, liquidated damages are assessed at a flat fee of $150.00 per month plus 1.5% simple interest per month on all unpaid contributions. Peters Decl. ¶ 12.

13, 14.  On August 1, 2007, Defendant designated the Engineering & Utility Contractors Association ("EUCA") as its sole representation for the purpose of negotiating the Trust Agreements.  Id. ¶ 7.  On May 30, 2012, Defendants designated United Contractors as its sole representation for the purpose of negotiating the United Contractors/Laborers Master Labor Agreement for Northern California.  Id. ¶ 7, Ex. H.  Defendant has never given written notice of intent to terminate the Agreements.  Id. ¶ 8.  According to the language of the Agreement, the Agreement is valid unless and until Defendant submits such written notice.  Id.

After Defendant refused to submit its books for a compliance audit, on February 6, 2014, Plaintiffs filed a suit seeking unpaid trust fund contributions owed by Defendant, liquidated damages and interest, attorneys' fees and an injunction requiring Defendant to submit its records for a compliance audit by Plaintiffs.  Id. ¶ 15; Dkt. No. 1.  On March 5, 2014, Defendant was served.  Dkt. No. 12.  Defendant subsequently submitted its books to Plaintiff for an audit.  Motion at 2.  The audit revealed various debts that Defendant owes Plaintiff.  Id. at 2-3; Declaration of Jennifer Peters ("Peters Decl.") ¶ 15.  Defendant refused to pay the audit shortages.  Id. ¶ 16.  On January 22, 2015, Plaintiffs filed and served upon Defendant a First Amended Complaint, adding the newfound audit shortages to the original relief requested.  Dkt, No. 32.  Defendant failed to answer the amended complaint.  On February 24, 2015, the Clerk entered default.  Dkt. No. 39.  Plaintiffs have consented and Defendant has not appeared.  By its default, Defendant is deemed to have admitted the well-pleaded averments of the Complaint, except those as to the amount of damages.  See Fed. R. Civ. P. 8(b)(6).

Plaintiffs seek default judgment of $162,777.63 in unpaid contributions, damages, and fees, as well as an injunction.  Id. at 1-2.  Specifically, Plaintiffs claim that from May 2012 through November 2014, Defendant reported hours worked by its employees, but failed to pay $79,338.67 in unpaid contributions, $1,200 in liquidated damages and $19,104.41 in interest.  Mot. at 6; Peters Decl. ¶ 16.  From May 2011 through July 2014, Plaintiffs allege that Defendant made delinquent contributions to the trust fund resulting in $2,850.00 in liquidated damages and $10,697.65 in interest.  Mot. at 6; Peters Decl. ¶ 16.  Finally, Plaintiffs claim $21,462.53 in unpaid contributions and $6,249.33 in liquidated damages for the period January 2011 through June 2014

as revealed in the audit performed after this litigation commenced. Peters Decl. ¶ 17. Plaintiffs also seek $20,901.25 in attorneys' fees and $973.79 in costs associated with this action to enforce the Agreements and recover delinquent amounts due. Mainguy Decl. ¶¶ 5-8. Plaintiffs further request that this Court order Defendant to submit its books and records for an audit by Plaintiff and retain jurisdiction over the case. Id. The relief requested is appropriate under case law, the Agreements and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1132(g)(2).

## II.     DISCUSSION

### A.     Jurisdiction and Service of Process

In considering whether to enter default judgment, a court must inquire into its jurisdiction over the subject matter and the parties. Tuli v. Republic of Iraq, 172 F.3d 707, 712 (9th Cir. 1999). Plaintiffs have properly pled subject matter jurisdiction under 29 U.S.C. §§ 185 and 1132. Plaintiffs have also established personal jurisdiction and that service was appropriate. Plaintiffs alleged that Defendant is an employer under 29 U.S.C. § 1002(5), and Plaintiffs arranged for Defendant to be served in Oakland, California.

### B.     Default Judgment

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1). Defendant is a corporation and therefore not an unrepresented minor, incompetent person, or a person in military service, or otherwise exempted from default judgment.

Upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991). Entry of default judgment requires the consideration of several factors, including: (1) the possibility of prejudice to the Plaintiffs; (2) the merits of Plaintiffs' substantive claim; (3) the sufficiency of the

Complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The Eitel factors weigh in favor of entry of granting default judgment. Given Defendant's failure to appear, Plaintiffs have no further avenues for collecting relief; thus, failure to grant this motion would cause Plaintiffs prejudice. As discussed below, Plaintiffs' claim is substantively supported by the text of the signed Agreements and ERISA. The complaint sufficiently outlines Plaintiffs' request for relief. See Compl at 3-5. The sum of money at stake, $162,777.63, is lower than other sums that Courts have found reasonable. See Eitel, 782 F.2d at 1472 ("Eitel was seeking almost $3 million in damages"); see also Church Bros., LLC v. Garden of Eden Produce, LLC, 2012 WL 1155656, at *3 (N.D. Cal. Apr. 5, 2012) (holding that a sum of $212,259.21 was a "modest" amount). As Defendant has admitted to all well-pleaded factual allegations by default, there is little chance of a dispute over material fact. Heidenthal, 826 F.2d at 917-918. Furthermore, Plaintiffs' claims are based upon Defendant's own contribution reports, further minimizing the risk that there may be a dispute of material fact. Peters Decl. ¶¶ 15-16. Defendant was properly served and there is no evidence that Defendant's failure to appear or defend itself is excusable. Finally, the Court cannot adjudicate on the merits without the Defendant. Thus, the Eitel factors support an entry of default judgment for Plaintiffs.

**C.     Liability**

Plaintiffs seek damages in the form of: (i) Defendant's unpaid and delinquent trust fund contributions; (ii) liquidated damages and interest on these contributions; (iii) attorneys' fees and costs; and (iv) submission of Defendant's books and records for an audit. All of these damages are appropriate. In addition to the language of the Agreements and relevant case law, ERISA states that when an employee benefit plan obtains judgment in its favor, the plan is to be awarded:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for

4

>under the plan in an amount not in excess of 20 percent […] (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132 (g)(2)(A-E).

### 1. Delinquent and Unpaid Trust Fund Contributions

Plaintiffs claim that Defendant owes a total of $100,801.20 in unpaid trust fund contributions, including the findings of the audit. Peters Decl. Exs. K-M (providing a breakdown of funds owed from each month). This amount is appropriate. Defendant received notice of these damages upon service of Plaintiffs' amended complaint. Compl. at 6. ERISA section 502(g)(2)(A) specifically instructs the Court to award unpaid contributions if default judgment is granted, and determinations regarding contributions due to trust funds are to be construed in the funds' favor. See Irwin v. Carpenters Health and Welfare Trust Fund for California, 745 F.2d 553, 555-557 (9th Cir. 1984); Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1333 (9th Cir. 1988). As Defendant has not challenged any of these allegations and they bare supported by evidence, they are reasonable and the Court recommends awarding Plaintiffs the full $100,801.20 in unpaid contributions.

### 2. Liquidated Damages and Interest

In addition to unpaid and delinquent contributions, Plaintiffs claim liquidated damages and interest on these contributions in accordance with ERISA and the Agreements. Peters Decl. ¶¶ 12, 15. Specifically, Plaintiff seeks: (i) $1,200 in liquidated damages and $19,104.41 in interest for reported but unpaid contributions from May of 2012 through November of 2014; (ii) $2,850.00 in liquidated damages and $10,697.65 in interest for contributions paid late between May of 2011 and July of 2014; and (iii) $6,249.33 in liquidated damages as revealed by the audit. Id. ¶ 15, Exs. J-M. It is appropriate to award Plaintiffs these damages.

ERISA section 502(g)(2)(C)(ii), the liquidated damages provision, "applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of the suit, and (3) the plan provides for liquidated damages." Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215 (9th Cir. 1989). As Plaintiffs

have satisfied each factor here, liquidated damages are appropriate. Furthermore, the liquidated damages sought are less than the actual costs incurred by Plaintiffs in their attempt to recover such damages, and are appropriate in light of similar ERISA cases. See Peters Decl. ¶ 12; see also, e.g., Bd. of Trs. v. KMA Concrete Constr. Co., 2011 WL 4031136, at *7 (N.D. Cal. Aug. 12, 2011) ("[b]ecause the liquidated damages provision was part of the bargain and Section 1132(g) [of ERISA] specifically contemplates a liquidated damages award . . . the court finds the liquidated damages reasonable"). In addition to liquidated damages, ERISA also explicitly allows for recovery of interest on unpaid or late contributions. 29 U.S.C. § 1132 (g)(2)(B).

Further, the Trust Agreement of which Defendant is a signatory under the Northern California District Council of Laborers ("Trust Agreement") explicitly provides for both liquidated damages and collection of interest in the event of delinquent payments. Peters Decl. Ex. A., Art. II, § 10. Here, there is both contractual and statutory support for collection of liquidated damages and interest, as well as case law and supporting documentation supporting the amount sought. Thus, the Court should award Plaintiffs the demanded amount of $40,101.39 in liquidated damages and interest.

### 4. Attorneys' Fees

Plaintiffs seek $20,901.25 in attorney fees and $973.79 in costs. Mainguy Decl. ¶¶ 7-8. Recovery of these fees is supported by contract, statute and case law. Article 4, section 3 of the Trust Agreement states:

> [i]f any Individual Employer defaults in the making of Contributions or payments and if the Board consults legal counsel, or files any suit or claim, there will be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, costs and all other reasonable expenses incurred in connection with the suit or claim . . .

Peters Decl. Ex. A., Art. IV § 3 at 9. ERISA also calls for attorney's fees and costs to be awarded in the case of favorable judgment for a trust fund. 29 U.S.C. § 1132(g)(2)(D). Further, when a collective bargaining agreement has provided that a defaulting employer will be responsible for reasonable attorney's fees, the Court has the power to enforce such an award. See Kemner v. District Council of Painting and Allied Trades No. 36, 768 F.2d 1115, 1120 (9th Cir. 1985).

Here, the attorneys' fees and costs demanded, while somewhat higher than in other default judgment cases, are reasonable under the facts of this case. With attorneys' rates of $145 and $345 per hour, Plaintiffs demand $19,276.25 for 59 hours spent on this case to date plus $1,625.00 for anticipated work associated with this motion. Mainguy Decl. ¶¶ 5-7, Ex. A. The costs sought reasonably consist of the filing fee for the complaint, service of documents upon Defendant and reproduction costs. Id. Mainguy Decl. Ex. B. The sum of fees and costs is less than other awards historically granted by this District. See, e.g., Bd. of Trs. v. Cal-Kirk Landscaping, No. C-08-3292, Dkt. No. 95 at 16 (N.D. Cal. Oct. 16, 2012) (Chen, J.) (awarding Plaintiff $34,853.63 in fees and costs). The Court recommends that Plaintiffs be awarded the full amount of costs and fees sought.

### 5.  Audit of Defendant's Books and Records and Request to Retain Jurisdiction

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E). Plaintiffs seek an Order allowing them to conduct an audit of Defendant's books and records to determine whether Defendant owes additional fees to Plaintiffs. By entering into the Agreements themselves, Defendant agreed to submit to an audit in order to ensure compliance with the Agreements. See, e.g., Peters Decl. Ex. A at 12, Art IV § 7 ("Individual Employer agrees to permit an auditor . . . to examine and copy books . . . to determine whether that Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund."). Additionally, service of the Complaint constituted notice that Plaintiffs would seek an audit against Defendant. Compl. at 1 ¶ 5. An audit is therefore appropriate and justified. Plaintiffs seek an audit:

> covering the period July 2014 to date, by auditors selected by the Trust Funds at Defendant's premises during business hours, or where the records are kept, at a reasonable time or times, and to allow said auditors to examine and copy such books, records, papers, reports of Defendant, that are relevant to the enforcement of the collective bargaining agreement or Trust Agreements, including but not limited to the following: Individual earning records (compensation); W-2 forms; 1096 and 1099 forms; reporting forms for all Trust Funds; State DE-3 tax reports; workers compensation insurance report; employee time cards; payroll journal; quarterly payroll tax returns (form 941); check register and supporting cash voucher; Form 1120- 1040 or partnership tax returns; general ledger – (portion relating to payroll audit).

See Proposed Order. The Court recommends that judgment be entered compelling Defendant to submit to an audit for the purpose of determining amounts owed, and provide relevant records requested by the auditor, including those described above.

Plaintiffs further request that this Court maintain jurisdiction over the matter such that Plaintiffs may move to amend the judgment in the event that a timely audit reveals further delinquent amounts owed. Mot. at 15-16. In ERISA cases, the Court may retain jurisdiction for the purpose of adjusting damages awarded after a timely audit. See Bd. of Trs. v. KMA Concrete Constr. Co., 2011 WL 7446345, at *6 (N.D. Cal. Dec. 20, 2011) (retaining jurisdiction to account for further delinquencies discovered by an audit after proper showing by the plaintiff); Bd. of Trs. v. RBS Washington Blvd., LLC, 2010 WL 145097, at *6-7 (N.D. Cal. Jan. 8, 2010) (same). The Court recommends granting this relief.

### III. CONCLUSION

For the reasons discussed above, the Court recommends that Plaintiffs' motion be granted. Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO RECOMMENDED.**

Dated: August 6, 2015

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge